J-A11011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: JACQUELINE ANN JOHNS, AN INCAPACITATED PERSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ANN M. JOHNS | No. 710 WDA 2013 |

Appeal from the Order of April 18, 2013
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 6934 OF 2008

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E. and OLSON, J.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 12, 2014**

Appellant, Ann M. Johns, appeals from the order entered on April 18, 2013 granting a petition to transfer guardianship of Jacqueline Ann Johns to the Commonwealth of Virginia. We affirm.

We summarize the facts and procedural history of this case as follows. On August 24, 2009, the orphans' court of Allegheny County adjudicated Jacqueline Ann Johns (Jacqueline), Appellant's mother, an incapacitated person. At the time of adjudication, the orphans' court appointed counsel to represent Jaqueline who was residing in Vienna, Virginia with her daughter, Jackie Indelicarto. The orphans' court appointed Michael S. Johns as guardian of Jacqueline's person; Mark S. Johns continued serving as agent under a durable power of attorney and, thus, the orphans' court did not appoint a guardian to manage Jacqueline's estate.

On December 24, 2012, Appellant filed a petition for a rule to remove court-appointed counsel. On December 28, 2012, Appellant filed a petition for a review hearing, removal of the guardian of the person, and appointment of a guardian of the estate. Jacqueline, Michael S. Johns, Mark S. Johns, and court-appointed counsel filed preliminary objections to Appellant's petitions. On March 11, 2013, Michael S. Johns, filed a petition to transfer the guardianship to the Commonwealth of Virginia, maintaining that although Jacqueline owned a residence in Pennsylvania, she had resided in Virginia for four years. Appellant filed an answer, objecting to a transfer. On March 14, 2013, the orphans' court held a consolidated hearing on all the parties' submissions.

On April 18, 2013, the orphans' court (1) granted the petition to transfer guardianship to the Commonwealth of Virginia; (2) sustained the preliminary objections to Appellant's petitions; and (3) granted protective orders filed by Michael S. Johns, Mark S. Johns, and court-appointed counsel for Jacqueline. In that same order, the orphans' court denied Appellant's: (1) petitions for a review hearing, removal of the guardian of the person, removal of court-appointed counsel, and appointment of a guardian of the estate; (2) motion to allow telephonic testimony; (3) and motions to compel deposition answers for Margaret Alexander, Albert Johns, and Martin Johns.

Moreover, the order cancelled a scheduled review hearing. This timely appeal resulted.[1],[2]

Appellant presents the following issues for our review:

1. Whether the Orphans' Court erred as a matter of law and exceeded its jurisdiction when it granted the petition to transfer guardianship in the absence of any evidence of record that the service requirements of Chapters 55 and 59 of the [Probate, Estates and Fiduciaries] Code had been satisfied?

_____

[1] Initially, we note the parties dispute whether the order at issue constitutes a final, appealable order. Upon review, we conclude it is. As the note to Rule 342 acknowledges, several revisions to the Rules of Appellate Procedure have been implemented over the years because "[e]xperience has proven that the determination of finality" of orphans' court orders was "not workable and ha[d] been applied inconsistently around the Commonwealth." Pa.R.A.P. 342, note. Pursuant to Pa.R.A.P. 342(a)(5), an appeal may be taken as of right from "[a]n order determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship." Pa.R.A.P. 342(a)(5). "Subdivision (a)(5) is intended to … resolve[] a conflict in prior appellate court decisions by stating definitively that an order removing or refusing to remove a fiduciary is an immediately appealable order." Pa.R.A.P. 342, note. While the orphans' court order at issue herein transferred guardianship to the Commonwealth of Virginia, it also denied Appellant's petition for a review hearing for the removal of the guardian of Jacqueline's person and the appointment of a guardian for her estate. Thus, we conclude that under Pa.R.A.P. 342(a)(5), the order at issue is final, appealable, and properly before us.

[2] Procedurally, on April 25, 2013, Appellant filed a notice of appeal within 30 days of the April 18, 2013 order as required. *See* Pa.R.A.P. 903(a). On May 1, 2013, the orphans' court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied on May 22, 2013. The orphans' court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 1, 2013.

2. Whether the Orphans' Court erred as a matter of law when it granted the petition to transfer guardianship without any finding of fact that the guardianship would be accepted by Virginia pursuant to the statute?

3. Whether the Orphans' Court erred as a matter of law when it granted the petition to transfer guardianship without any finding of fact that the plans for care and services for Mrs. Johns in Virginia are reasonable and sufficient pursuant to the statute?

4. Whether the Orphans' Court abused its discretion when it refused to permit Appellant to present additional testimony in support of her objections to the petition to transfer guardianship?

5. Whether the Orphans' Court abused its discretion when it found that eleven of the Johns children consented to the petition to transfer guardianship?

6. Whether the Orphans' Court erred as a matter of law when it granted the preliminary objections to [the] petition for review hearing, removal of guardian of the person, and appointment of guardian of the estate and dismissed the petition for a review hearing, removal of guardian of the person, an appointment of guardian of the estate?

7. Whether the Orphans' Court erred as a matter of law when it cancelled the review hearing?

8. Whether the Orphans' Court erred as a matter of law when it granted Attorney Liotus's second preliminary objections raising questions of fact to amended petition for a rule to remove court-appointed counsel and dismissed the amended petition for a rule to remove court-appointed counsel?

9. Whether the Orphans' Court abused its discretion when it granted the guardian and agent/[power of attorney's] second motion for protective order filed pursuant to Pa.R.C.P. 4012?

- 4 -

10. Whether the Orphans' Court abused its discretion when it granted Attorney Liotus' second motion for protective order filed pursuant to Pa.[R.]C.P. 4012?

11. Whether the Orphans' Court abused its discretion when it denied the motions to compel?

Appellant's Brief at 6 (complete capitalization and italics omitted).

Our standard of review of the rulings of an orphans' court is as follows. "The orphans' court's factual findings receive the same deference accorded factual findings of a jury, but we must ensure that the decision of the court is free from legal error." *In re Estate of Rosengarten*, 871 A.2d 1249, 1253 (Pa. Super. 2005).

In her first issue presented, Appellant contends that the statutory service requirements were not met because there is no evidence that Jacqueline was served personally with notice of the transfer petition within 20 days of the transfer proceeding. Appellant's Brief at 18-21.

Service is required to implicate the jurisdiction of the orphans' court in guardianship proceedings. *In re Katic*, 439 A.2d 1235, 1236 (Pa. Super. 1982). "The issue of subject matter jurisdiction cannot be waived and may be raised by any party, or by the court *sua sponte,* at any stage of the litigation." *Cobbs v. SEPTA*, 985 A.2d 249, 255 (Pa. Super. 2009). Pursuant to 20 Pa.C.S.A. § 5921(a), a guardian may petition the court to transfer guardianship to another state. Notice of such a petition "must be given to the persons that would be entitled to notice of a petition in this Commonwealth for the appointment of a guardian or conservator." 20

- 5 -

Pa.C.S.A. § 5921(b). Relevant herein, when petitioning for the appointment

of a guardian:

> Written notice of the petition and hearing shall be given in large type and in simple language to the alleged incapacitated person. The notice shall indicate the purpose and seriousness of the proceeding and the rights that can be lost as a result of the proceeding. It shall include the date, time and place of the hearing and an explanation of all rights, including the right to request the appointment of counsel and to have counsel appointed if the court deems it appropriate and the right to have such counsel paid for if it cannot be afforded. The Supreme Court shall establish a uniform citation for this purpose. A copy of the petition shall be attached. Personal service shall be made on the alleged incapacitated person, and the contents and terms of the petition shall be explained to the maximum extent possible in language and terms the individual is most likely to understand. Service shall be no less than 20 days in advance of the hearing. In addition, notice of the petition and hearing shall be given in such manner as the court shall direct to all persons residing within the Commonwealth who are *sui juris* and would be entitled to share in the estate of the alleged incapacitated person if he died intestate at that time, to the person or institution providing residential services to the alleged incapacitated person and to such other parties as the court may direct, including other service providers.

> \*        \*        \*

> In appropriate cases, counsel shall be appointed to represent the alleged incapacitated person in any matter for which counsel has not been retained by or on behalf of that individual.

20 Pa.C.S.A. § 5511(a).

Appellant's opening claim requires that we interpret the provisions of

Section 5511(a). The object of interpretation and construction of all statutes

is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, their plain language is generally the best indication of legislative intent." *In re Carroll*, 896 A.2d 566, 573 (Pa. 2006) (citation omitted); 1 Pa.C.S.A. § 1921(b). "A reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit." *Id.* "In ascertaining legislative intent, [a court] is guided by, among other things, the primary purpose of the statute and the consequences of a particular interpretation." *Id.* (citations omitted). We must further assume that the legislature did "not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1).

Here, the plain language of the guardianship statute under § 5511 states that, "[p]ersonal service shall be made on the alleged incapacitated person, and the contents and terms of the petition shall be explained to the maximum extent possible in language and in terms the individual is most likely to understand." 20 Pa.C.S.A. § 5511(a). In transferring guardianship, notice of a transfer petition "must be given to the persons that would be entitled to notice of a petition … for the appointment of a guardian[.]" 20 Pa.C.S.A. § 5921(b). Thus, at first blush it appears that the plain language required notice to Jacqueline regarding the transfer petition. However, in reading the notice requirements for the appointment of a guardian, the service requirements consistently refer to the subject of a potential guardianship as "the **alleged** incapacitated" person. Moreover, the clear

- 7 -

statutory purpose is "to indicate the purpose and seriousness of the proceedings and the rights that can be lost as a result of the proceeding … including the right to request the appointment of counsel and to have counsel appointed if the court deems it appropriate[.]"  20 Pa.C.S.A. § 5511(a).  The statute again states emphatically that "[i]n appropriate cases, counsel shall be appointed to represent the alleged incapacitated person in any matter for which counsel has not been retained by or on behalf of that individual." *Id.*  Thus, the purpose of the notice requirements is clear.  Guardianship proceedings cannot be initiated unless the alleged incapacitated is adequately informed and/or represented at the proceeding.  The same holds true for transfer proceedings.

We have previously determined:

> Notice, the most basic requirement of due process, must be reasonably calculated to inform interested parties of the pending action, and the information necessary to provide an opportunity to present objections. The form of the notice required depends on what is reasonable, considering the interests at stake and the burdens of providing notice.  As long as a method of service is reasonably certain to give notice [] that an action is pending [], the fact that [there is a failure] to receive actual notice does not invalidate service on due process grounds.

*Noetzel v. Glasgow, Inc.*, 469, 487 A.2d 1372, 1377-1378 (Pa. Super. 1985).

Moreover, in the context of a guardianship proceeding, our Supreme Court has previously determined:

> In the absence of service of citation upon appellant **or general appearance on her behalf**, all that transpired below was without jurisdiction over her person and was, therefore a nullity. The decree of [incapacity], without actual jurisdiction over appellant lacks validity and binding effect.

*In re Katic*, 439 A.2d at 1236 (1982) (emphasis added), *citing* **Hicks Estate**, 199 A.2d 283, 285 (Pa. 1964).

On this issue, the orphans' court *sub judice* concluded:

> While [] allegations [that there was no evidence that Jacqueline Johns was personally served with the petition to transfer pursuant to statute] are interspersed throughout the pleadings filed by [Appellant], she never pursued these issues via argument in open court prior to or during the hearing on the [p]etition to [t]ransfer. Thus, the [orphans' court] finds that the issues are waived. Moreover, even if the issues were not waived, the [c]ourt finds that any failure to notify Jacqueline Johns of the request to transfer the matter to another court is not a fatal error, as the [c]ourt does not believe, based upon the deposition testimony of her treating psychiatrist, that she would have understood the current court proceedings.

Orphans' Court Opinion, 7/1/2013, at 2.

There is no dispute that the orphans' court had already appointed counsel to represent Jacqueline in guardianship proceedings. Upon review of the record, court-appointed counsel was present at the transfer proceeding. Thus, because appointed counsel was present and representing Jacqueline's interest, we deem that there was fair notice of the proceeding. Actual notice is not necessary under these circumstances and does not invalidate service on due process grounds. Moreover, while the statute requires notice that the transfer petition "be explained to the maximum extent possible in

language and terms the individual is most likely to understand[,]" there is no dispute that Jacqueline was unable to understand the proceedings. ***See*** Deposition of Dr. Rhea Nishita Mehra, M.D., 2/25/2013, at 27-31 ("I do not think [Jacqueline Johns] totally understands the guardianship matter completely;" "I do not see her being able to handle the stressful situations around going to court and I do not think she would be able to contribute in any meaningful way in the court anyways."). In fact, Appellant conceded as much. ***See*** Petition for a Review Hearing, 12/28/2012, at ¶ 47 ("Because of Mrs. Johns's medical condition, her ability to receive and evaluate information and effectively communicate decisions regarding her personal health and safety and financial affairs is completely impaired."). For all of the foregoing reasons, we believe that appointed counsel's representation of Jacqueline at the transfer hearing afforded her proper due process. Thus, we discern no error by the orphans' court and Appellant's first issue fails.

Additionally, Appellant claims all other interested parties were not served with notice of the transfer proceeding. Appellant's Brief at 21. The entire sum of her argument in this regard is as follows:

> Just as with personal service and 20 days advance notice, *supra*, Section 5511(a) requires that notice be provided "to all persons residing within the Commonwealth who are *sui juris* and should be entitled to share in the estate of the alleged incapacitated person if he died intestate at that time." Section 5511(a) is made applicable through Section 5921(b).

***Id.***

Appellant does not indicate who did not receive notice or point to the record to develop this issue for our review. Failing to direct this Court to specific portions of the record in support of an argument violates Pa.R.A.P. 2119(c). *See Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa. Super. 2006) (concluding, *inter alia*, that a claim was waived for failure to direct this Court's attention to that part of the record substantiating his claim). Moreover, "[i]t is not for an appellate court to scour the dockets of the various prothonotaries to confirm or deny allegations of any party to an appeal." *Fiore v. Oakwood Plaza Shopping Ctr., Inc.*, 585 A.2d 1012, 1019 (Pa. Super. 1991). Thus, we are constrained to find the latter portion of Appellant's first issue waived.

Appellant's second and third claims assert that the orphans' court erred by granting the transfer petition without any finding of fact that guardianship would be accepted by the Commonwealth of Virginia or that the care and services that Jacqueline receives in that state are reasonable and sufficient. Appellant's Brief at 21-22.

The transfer of guardianship statute provides, in pertinent part:

> **(d) Provisional guardianship order.--**The court shall issue an order provisionally granting a petition to transfer a guardianship and shall direct the guardian to petition for guardianship in the other state if the court is satisfied that the guardianship will be accepted by the court in the other state and the court finds that:
>
> > (1) the incapacitated person is physically present in or is reasonably expected to move permanently to the other state;

(2) an objection to the transfer has not been made or, if an objection has been made, the objector has not established that the transfer would be contrary to the interests of the incapacitated person; and

(3) plans for care and services for the incapacitated person in the other state are reasonable and sufficient.

20 Pa.C.S.A. § 5921(d).

On Appellant's second and third issues presented, the orphans' court concluded:

[Appellant] never raised [the issue of whether guardianship would be accepted in Virginia] prior to or at the time of the hearing. Thus, [the orphans' court found] that this issue has been waived. Moreover, there is no reason to believe that the court in Virginia would not accept the guardianship and Appellant has not established that such would occur.

\* \* \*

[Furthermore,] [o]n the contrary, the [c]ourt found specifically in its [o]rder dated April 18, 2013, that the transfer would be beneficial to Jacqueline Johns because she had been residing in Virginia for over four years at her daughter's residence and her daughter was providing her with excellent care.

\* \* \*

[S]he has been receiving excellent care in her daughter's home since she began living there in February 2009.

Orphans' Court Opinion, 7/1/2013, at 2-3.

Upon review, we agree. At no time during the transfer proceeding did Appellant argue that guardianship would not be accepted by the Commonwealth of Virginia. Appellant cannot raise the issue for the first

time on appeal. *See* Pa.R.A.P. 302(a). Regardless, Michael Johns, Jacqueline's son and appointed guardian of her person, testified that he retained counsel in Virginia "[t]o transfer guardianship in Virginia at the request of or at the advice of the doctors down there[.]" N.T., 3/14/2013, at 13-14. Counsel for Michael Johns also stated "[c]ounsel has been retained down there. They are also members of the compact with this Adult Guardianship Act and they are ready to proceed, but unfortunately [the orphans' court] must first order a provisional order allowing the transfer." *Id.* at 2. Moreover, there was overwhelming evidence that Jacqueline: (1) has been living in Virginia for four years where all of her doctors are located; (2) considers Virginia her home; (3) is concerned about being removed from her current living arrangement; and (4) is receiving excellent care. *Id.* at 14, 29, and 38-40. In support, Dr. Mehra, Jacqueline's treating psychiatrist in Virginia, opined that although Jacqueline's dementia is becoming "more progressive[,]" "she is getting the best services that are appropriate for her level of care" and that living and treating in Virginia "is the best situation she can be in." N.T., 2/25/2013, at 31-32. Accordingly, we discern no abuse of discretion or error of law and Appellant's second and third issues are without merit.

Next, Appellant asserts that the orphans' court abused its discretion when it refused to permit her additional time to present testimony from potential witnesses. *Id.* at 22.

- 13 -

We have previously determined:

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. An abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is over-ridden or misapplied, or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record. The grant of a continuance is discretionary and a refusal to grant is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated.

*Commonwealth v. Hansley*, 24 A.3d 410, 418 (Pa. Super. 2011).

Moreover,

> [w]hen there is no assurance that a witness can be procured or considerable uncertainty concerning the content of the witness' testimony, then denial of a continuance is proper. Moreover, if the potential witness' testimony is merely cumulative or available from another source, then denial is proper.

*Commonwealth v. Plath*, 405 A.2d 1273, 1275 (Pa. Super. 1979) (internal citations omitted).

Initially, we note that Appellant has not provided any legal authority on this issue and, thus, has waived her claim. "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority." *In re Estate of Whitley*, 50 A.3d 203, 209-210 (Pa. Super. 2012) (internal citation omitted). "Failure to cite relevant legal authority constitutes waiver of the claim on appeal." *Id.* Further, assuming the issue was properly before us, we discern no abuse of discretion. Upon review of the transcript of proceedings, Appellant testified primarily about the

contentious relationship she experienced with her siblings regarding visitation. She requested additional time to procure witnesses to testify that Jacqueline had asked to see Appellant and "other friends … who would be able to testify as to what happened" during visits between Appellant and Jacqueline. N.T., 3/14/2013, at 73. Appellant gave no assurances that these witnesses could be procured. Moreover, the certified record confirms that Appellant testified on her own behalf regarding these contentions. Thus, additional witness testimony would have been cumulative.

With regard to the transfer of guardianship, Appellant's fifth claim avers that the orphans' court abused its discretion when it determined that eleven of Jacqueline's children consented to the transfer when consents of only six of her children were entered into evidence at the hearing. *Id.* at 22-23. Appellant claims that the orphans' court failed to cite authority for its position. *Id.* at 23. Curiously, however, Appellant fails to cite authority for her position and does not point to the record to substantiate her claim. Thus, she has waived the issue. *See Einhorn*, 911 A.2d at 970; *In re Estate of Whitley*, 50 A.3d at 209-210.

In her sixth and seventh issues presented, Appellant contends that the orphans' court erred when it sustained preliminary objections to her petition for a review hearing, removal of the guardian of the person, and the appointment of a guardian of the estate and then cancelled a previously scheduled review hearing. She claims that she pled sufficient facts to demonstrate the need for a review hearing. Specifically, Appellant asserted

that Michael Johns, as guardian of Jacqueline's person, failed to perform his duties and/or act in Jacqueline's best interest by: (1) preventing Appellant from visitation with Jacqueline; and, (2) failing to provide appropriate medical treatment for schizophrenia. Appellant's Brief at 23-25. Appellant further contends that the orphans' court should appoint a guardian of Jacqueline's estate as there has been a change in the need for guardianship services because the power of attorney established in 2008 was executed while Jacqueline was already incapacitated. *Id.* at 26.

Our standard and scope of review of a court's order sustaining preliminary objections are as follows:

> Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. The test on preliminary objections is whether it is clear and free from doubt from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. To determine whether preliminary objections have been properly sustained, this Court must consider as true all of the well-pleaded material facts set forth in appellant's complaint and all reasonable inferences that may be drawn from those facts.
>
> This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion.

*In re B.L.J., Jr.*, 938 A.2d 1068, 1071 (Pa. Super. 2007) (internal citations and quotations omitted).

Pursuant to 20 Pa.C.S.A § 5512.2(a):

> The court may set a date for a review hearing in its order establishing the guardianship or hold a review hearing at

any time it shall direct. The court shall conduct a review hearing promptly if the incapacitated person, guardian or any interested party petitions the court for a hearing for reason of a significant change in the person's capacity, a change in the need for guardianship services or the guardian's failure to perform his duties in accordance with the law or to act in the best interest of the incapacitated person. The court may dismiss a petition for review hearing if it determines that the petition is frivolous.

20 Pa.C.S.A. § 5512.2.

Here, the orphans' court determined:

[…] Preliminary [o]bjections were properly [sustained] and the [p]etition was properly dismissed for the following reasons: (1) the [p]etition failed to contain an allegation that there had been a significant change in Jacqueline Johns' capacity; (2) the [p]etition failed to contain an allegation that there had been a change in the need for guardianship services; (3) the [p]etition did not allege that the court-appointed guardian had failed to perform his duties or act in Ms. Johns' best interest; and (4) the [p]etition did not allege that Ms. Johns had been harmed in any manner or that she was at risk. Rather, the main thrust of the [p]etition was [Appellant's] complaint that she had not been permitted to visit with her mother, along with claims of error that had occurred during or shortly after the original guardianship proceeding in 2009.

[…] The review hearing was cancelled because the [c]ourt had dismissed the [p]etition for [r]eview and granted the [p]etition to [t]ransfer the [g]uardianship to Virginia. As such, there was no matter pending before the [c]ourt. Moreover, it would not have made sense to conduct a review hearing after the guardianship had been transferred to another state.

Orphans' Court Opinion, 7/1/2013, at 4-5.

Initially, we note that the orphans' court was not viewing Appellant's petition in isolation due to the ongoing proceedings since the guardianship was established in 2009.  We are mindful that:

> When considering preliminary objections, a court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court.  The general rule against taking judicial notice when considering preliminary objections in the nature of a demurrer is subject to limited exceptions.  It is appropriate for a court to take notice of a fact which the parties have admitted or which is incorporated into the [petition] by reference to a prior court action.

*Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 165 (Pa. Super. 2013) (citations and brackets omitted).  There is no dispute that the orphans' court judge has presided since 2009 over all of the proceedings related to Jacqueline's guardianship and Appellant does not argue that the orphans' court erred in sustaining the preliminary objections based on evidence outside of the four corners of her petition.

As previously mentioned, at the transfer hearing held on March 14, 2013 while the preliminary objections were pending, the orphans' court heard testimony and was presented with the deposition of Jacqueline's treating psychiatrist who opined that she is receiving the best possible care in Virginia.  Moreover, Jacqueline is currently being "treated for chronic paranoid schizophrenia and depression and dementia." N.T., 2/25/2013, at 20.  Furthermore, upon review of the certified record, Appellant herself testified that she had been permitted visitation with Jacqueline on several

- 18 -

occasions. N.T., 3/14/2014, at 55-57, 71-72. Dr. Mehra testified that Jacqueline's demeanor changed after one such visit and she became "a little bit more isolative, somewhat irritable, sometimes uncooperative recently and just edgy. Nothing very serious, but just more stressed out." *Id.* at 26. In response to Dr. Mehra's questions about a lunch visit with Appellant, Jacqueline stated that she did not want anything to change and she did not want to leave where she is living in Virginia. *Id.* at 27. Moreover, upon further review, Appellant contacted protective services in Virginia regarding Jacqueline and after investigation it was determined protective services were not warranted. N.T., 3/14/2013, at 44. At one point when Jacqueline initially moved to Virginia, Jacqueline called Appellant and told her that she wanted to move back to Pittsburgh and Appellant called the police. *Id.* at 67. The orphans' court was privy to all of this information at the time that it decided the preliminary objections. Based upon the record before us, visitation has been contentious since the inception of the guardianship and the orphans' court found that the guardian of Jacqueline's person was acting in her best interest in managing Jacqueline's medical care and handling visitation. Accordingly, the orphan's court ultimately determined that the petition for review was frivolous and sustained preliminary objections. We discern no error or abuse of discretion.

In addition, we briefly note that a challenge to the power of attorney should have occurred at the time of the original guardianship proceeding, if Appellant believed that Jacqueline was incapacitated at the time she

executed the power of attorney. On appeal, Appellant does not argue that Mark S. Johns, is not acting in Jacqueline's best interest under the durable power of attorney. There is no averment that there was a "significant change in the person's capacity, a change in the need for guardianship services or the guardian's failure to perform his duties in accordance with the law or to act in the best interest of the incapacitated person." 20 Pa.C.S.A. § 5512.2. Hence, the orphans' court properly held there was no alleged change in the need for guardianship services because "the claims of error … had occurred during … the original guardianship proceeding in 2009." Orphans' Court Opinion, 7/1/2013, at 4-5. Thus, preliminary objections were properly sustained on this basis as well.

As such, because we discern no error or abuse of discretion in sustaining the preliminary objections, and thereafter dismissing Appellant's petition for review, we agree with the orphans' court that there was no need for a review hearing. Accordingly, Appellant's sixth and seventh claims fail.

In her eighth issue presented, Appellant contends the orphans' court erred by sustaining preliminary objections to her amended petition for a rule to remove court-appointed counsel. Appellant's Brief at 30. Appellant avers that, in her petition, she asserted three instances where Jacqueline's court-appointed counsel made unsubstantiated accusations that "forced contact with Appellant was taking its toll on Mrs. Johns." *Id.* at 31. Based upon our standard of review and the petition before us, we discern no abuse of

discretion in sustaining preliminary objections. As such, preliminary objections to Appellant's rule to remove court-appointed counsel were properly sustained.

In her last three allegations of error, Appellant argues that the orphans' court abused its discretion in denying motions to compel discovery and granting motions for protective orders filed by the guardian of the person, the power of attorney, and court-appointed counsel. Appellant's Brief at 36-44.

"When reviewing alleged discovery violations, we must first determine whether the discovery rules are violated, and if so, whether the trial court abused its discretion in fashioning its remedy." *Commonwealth v. Tomasello*, 693 A.2d 1310, 1311 (Pa. Super. 1997) (citation omitted). "Moreover, questions involving discovery lie within the discretion of the trial court and that court's decision will not be reversed absent an abuse of that discretion." *Id.* (citation omitted).

The orphans' court denied Appellant's three identical motions to compel discovery wherein Appellant sought to compel three of her siblings to explain how they retained counsel after they refused to do so during their depositions. The orphans' court determined "[t]he manner in which one retains counsel has no relevance to these proceedings, especially in light of the fact that there was no claim by the [siblings] that Appellant pay their attorney's fees." Orphans' Court Opinion, 7/1/2013, at 6. On appeal,

Appellant claims that her question pertaining to the retention of counsel "has the potential to show partiality or bias." Appellant's Brief at 44. However, Appellant fails to argue how or why the parties were potentially biased or showed partiality. We agree with the orphans' court and cannot discern how counsel privately retained by three interested family members has any relevancy or bearing on the guardianship proceedings. As such, we discern no abuse of discretion in denying relief.

Finally, the orphans' court granted protective orders to the guardian of Jaqueline's person and her power of attorney, as well as her court-appointed counsel. Appellant requested permission to subpoena bank records from PNC Bank and Dollar Bank to determine whether Jacqueline had issued checks after the orphans' court had declared Jacqueline incapacitated. Appellant's Brief at 38-39. Appellant also directed interrogatories and requests to court-appointed counsel "relate[d] to whether she is performing her duties as [c]ourt-appointed counsel for Mrs. Johns." *Id.* at 42. The orphans' court determined that it had already previously rejected these identical discovery requests. More specifically, it concluded that since it "had already ruled that the first request[s] sought information that was not relevant and pertinent to the guardianship proceeding, it was wholly proper to grant the protective order[s] with regard to the second request[s]." Orphans' Court Opinion, 7/1/2013, at 6. "Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause

shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense." Pa.R.C.P. 4012. Upon review, we discern no abuse of discretion by the orphans' court in granting protective orders after Appellant continued to request information already deemed irrelevant. For all of the foregoing reasons, Appellant's final three issues are without merit.

Order affirmed.

Ford Elliott, P.J.E., did not participate in this decision.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2014